367 P.2d 972 (1962)
In the Matter of the ESTATE of John H. FARAGHER, Deceased.
William D. GIBBS, Appellant, (Proponent and Defendant below),
v.
Margaret E. BURG, Appellee, (Contestant and Plaintiff below).
No. 3027.
Supreme Court of Wyoming.
January 23, 1962.
*973 Harry E. Leimback of Leimback, Winter & Hand, Casper, for appellant.
Morris R. Massey and William E. Barton, of Brown, Healy, Drew, Apostolos & Barton, Casper, for appellee.
Before BLUME, C.J., and PARKER, HARNSBERGER and McINTYRE, JJ.
Mr. Justice HARNSBERGER delivered the opinion of the court.
The deceased, John H. Faragher, died May 12, 1958. On that day Margaret E. Burg, appellee herein, filed in the District Court of Natrona County, Wyoming, an instrument dated March 1, 1955, as the last will and testament of the deceased, and on May 17, 1958, prayed that it be admitted to probate and that letters testamentary be issued to her. On May 14, 1958, William D. Gibbs, the appellant herein, filed in the same court an instrument dated April 4, 1957, as the last will and testament of the deceased, and thereafter on June 13, 1958, Gibbs filed a petition alleging he was the sole beneficiary under the instrument executed by the deceased on April 4, 1957; that he opposed the probate of the instrument dated March 1, 1955, filed by Margaret E. Burg, for the reason that the instrument dated April 4, 1957, revoked all former wills; that the last dated instrument of April 4, 1957, was the last will and testament of the deceased, and prayed the instrument dated March 1, 1955, not be admitted to probate and that letters testamentary not be issued to Margaret E. Burg, but that the court "enter" the last instrument to probate.
Margaret E. Burg filed answer to Gibbs' petition alleging the instrument dated April 4, 1957, was not executed according to law; that it was executed while the decedent was incompetent; and that its execution was induced through the exercise of undue influence, duress and fraud by Gibbs. Thereupon the court set both petitions for hearing before a jury.
At the conclusion of the evidence, the court instructed the jury and submitted to it a form of "special verdict," consisting of the following two questions, which was returned by the jury in the manner indicated below:
"1. At the time of the execution of the purported last will and testament dated April 4, 1957, was John H. Faragher of sound and disposing mind and memory, that is, did he at that time possess testamentary capacity?
 "Answer NO 
 "(Write `yes' or `no')
"2. Was the purported will described in question number 1 above the result of some undue influence exerted by some other person or persons over John H. Faragher?
 "Answer NO 
 "(Write `yes' or `no')"
The court thereupon entered its judgment that the instrument dated April 4, 1957, be denied probate and Gibbs appealed.
While appellant lists no less than eleven alleged errors, they sum up to saying the verdict is contrary to law and evidence, and that the court erred in the giving and refusing *974 of certain instructions, and in passing upon motions.
In considering the first of these claims, we must ignore the evidence favorable to appellant (upon which he seems to principally rely) and examine only the evidence favorable to the appellee, giving to it all reasonable inferences.
We summarize that evidence as follows:
In the instrument dated March 1, 1955, executed by deceased, he left his property to Mrs. Burg.
The deceased had been a very sick man for several years before he died, and was hospitalized upon three separate occasions from January through March of 1957, and again in December 1957, following which he remained in the hospital until his death.
The diagnosis of his condition by the physician who had attended him for twenty years and until he passed away was that for at least a year before he was hospitalized the deceased suffered from a vast lung involvement and arteriosclerosis or hardening of the vessels of the brain, which condition sometimes caused loss of memory, instability, dizziness, emotional upset, disorientation, listlessness, depression, confusion, and made a person difficult to get along with. Added to this explanation, the doctor said he called upon the deceased frequently between March 8 to March 30, 1957, and on April 1, 2, 3, 4, 5, 6, and 7, 1957, and provided Penicillin, Eldec Capsules and prescribed potassium iodide; observed he was emotionally upset, was listless, depressed and confused; that when deceased was hospitalized in February and March, he would go into other patients' rooms, become boisterous, use profane language, and had to be put in restraint; that between March and December of 1957, "he was very much emotionally upset," and "he seemed to feel that something had happened to his property, as though he had lost it or was going to lose it, and that really upset him terribly emotionally"; that the deceased had a revolver which the doctor took because he feared violence, and in order to avoid violence, because the deceased "was pretty hostile over the way things were going down at his place where he lived." When the physician was asked, "To whom did he demonstrate hostility?", he replied, "Well, he did mention a Mr. Gibbs." The doctor also said deceased was upset and disturbed because he thought he had signed a paper that affected his property and the beneficiary was Gibbs; that during the last month or two of his confinement, the deceased was irrational. Other testimony of the doctor revealed that deceased told him he was leaving his property to Mrs. Burg, but later, in March or April, the deceased offered to leave his property to the doctor.
A witness testifying in behalf of Gibbs also said the deceased had offered to give him the property.
The attorney who prepared the March 1, 1955, instrument offered for probate testified that in February of 1957, the deceased was a very sick man and he said he could not take care of his affairs; that he had known Mrs. Burg for many years and trusted her; that men were coming through his apartment and he was missing things; that previous to May 11, 1957, the deceased called her and stated he was worried for fear someone was getting his property away from him; that on May 11, 1957, at his request she went to his home, found him much agitated, mentally agitated, disturbed and upset; that deceased said he had signed a paper; that he was afraid he had given his property away, but the attorney's search of the county records disclosed no such transfer of his property; that deceased wanted the attorney to draw a deed giving his property to Mrs. Burg; that he said he wanted to make sure Mrs. Burg got his property; and that the attorney refused to draw such a deed because the deceased was not in condition to divest himself of his title. On September 15, 1957, the deceased told the attorney that Gibbs was acting like he owned the property; that deceased said he wanted Mrs. Burg to have what he had when he passed on; and that she was a good friend, befriended him and was kind to him.
*975 Another witness who was present at certain meetings between the attorney and deceased substantially corroborated the attorney's testimony.
In argument before this court, counsel for appellant seemed to insist that evidence bearing upon the state of deceased's mind before and after April 4, 1957, the date of execution of the contested instrument, was without probative force respecting the deceased's testamentary capacity at the time he executed the document. With this contention we disagree. This court, in Branson v. Roelofsz, 52 Wyo. 101, 124, 70 P.2d 589, 598, said, "Soundness of mind is not tested alone by the appearance at one particular moment." In 2 Wigmore on Evidence, 3d Ed., § 228 (1), p. 9, the author points out that:
"* * * The mode of operation of the mind [which we understand reflects the condition of the mind] * * cannot be ascertained to be normal or abnormal except by watching the effects through a multifold series of causes. On the one hand, no single act can be of itself decisive; while, on the other hand, any act whatever may be significant to some extent."
Wigmore concludes, "The first and fundamental rule, then, will be that any and all conduct of the person is admissible in evidence." Although these statements were made with reference to sanity, Wigmore, in § 229, p. 16, says:
"That any and all conduct may be indicative of Sanity or Insanity is equally true for testamentary capacity as for criminal capacity. * * *"
It is also pointed out that evidence of the testator's
"* * * plans, conversations, and acts (independently of the actual execution of the will) in reference to the disposition of his property after death will indicate whether his treatment of the subject is intelligent. Such facts are therefore admissible, like all other conduct, as bearing on his capacity at the time:"
In 94 C.J.S. Wills § 50, pp. 750-751, it is said:
"* * * evidence of his [the testator's] capacity near that date either before or after execution may, depending on the circumstances of each case, be material and admissible, especially in case of a progressive or permanent disease. * * *"
It is clear that the admissibility of such evidence rests largely in the discretion of the court. See 94 C.J.S. Wills § 52, p. 754, n. 61. And evidence of a testator's relations with friends, his ill feelings, or kindly feelings, whether manifested before or after the date of the questioned document, is proper to be considered in connection with the provisions of the disputed document, upon the issue of the deceased's testamentary capacity as of the date of the execution of the contested instrument. See also 94 C.J.S. Wills § 53, § 54, § 55, pp. 754-755, with cited cases and other authority; 57 Am.Jur., Wills, § 124, pp. 117-118; § 134, pp. 126-127.
The weight to be given all properly admitted evidence is a question resting solely with the trier of fact, in this case with the jury. We would not be justified in interfering with their conclusion, inasmuch as the testator's incapacity need only be established to their reasonable satisfaction and by evidence sufficient to sustain their reasonable inference that the testator was incompetent. See 94 C.J.S. Wills § 58, p. 761, nn. 4, 17. Furthermore, the jury were entitled to attach great weight to the testimony of the physician who attended deceased for more than twenty years and up to the date of his death. See 94 C.J.S. Wills § 58, p. 763, n. 50. This is particularly true in this case where that doctor testified as to what he heard and saw upon the occasion of his visits to deceased immediately before, on and after April 4, 1957, the very day the instrument in question was executed. Somewhat similarly the testimony of the lawyer who had served the deceased over a considerable period of time was entitled to weigh heavily *976 in the scale. See 94 C.J.S. Wills § 58, p. 764, n. 56.
The repeated declarations of the deceased that he wanted Mrs. Burg to have his property; his execution of the 1955 will in her favor; his being acquainted with and friendship for Mrs. Burg; his animosity toward Gibbs; his confusion following April 4, 1957, as to what he had signed respecting his property; his manifestation of the very symptoms of mental distress which the evidence shows are commonly present in a person afflicted with the diseases from which he suffered; his execution of an instrument prepared by a strange attorney and under his direction, rather than one prepared by and under the direction of the lawyer he had employed both before and after the April 4 incident  taken all together, constituted ample evidence supporting the jury's finding his execution of the instrument bearing that date was while he was without testamentary capacity.
The substance of the four instructions, the refusal of which is claimed to be error, deals with the presumption that a person of full age is possessed of sound mind and memory, possesses testamentary capacity and is not acting under undue influence, and instructs that in order to overcome that presumption the contrary must be established with reasonable certainty by evidence which preponderates. Appellant also insists the court erred in giving the very five instructions which sufficiently cover the same matter dealt with in the refused instructions. The criticism of one such instruction which explained what is meant by preponderance of evidence is that it did not include a statement that the presumption of sanity must be overcome by a preponderance of the evidence. This position is not well taken as another given instruction adequately states that proposition.
The appellant argues that the statement in one given instruction "that in the absence of evidence to the contrary it is presumed that a person is of sound mind and memory and does have testamentary capacity and that the maker of a will is not acting under undue influence from any person" is erroneous, and a clear misstatement of the law in view of Wood v. Wood, 25 Wyo. 26, 164 P. 844. Appellant interprets the Wood case as holding that in cases of will contests where the question is one of testamentary capacity, the presumption of sanity must be overcome by a preponderance of the evidence. Of course no such statement as this was made by the court, although a correct quote might have been:
"* * * we think the more reasonable rule is that which requires alleged testamentary incapacity to be shown by a preponderance of the evidence." Wood v. Wood, 25 Wyo. 26, 46, 164 P. 844, 850.
Appellant obviously disregards the rest of the given instruction which continued, saying:
"Whenever evidence has been presented in the case from which you find that such presumption has been met or overcome, then a presumption is no longer of any force or effect and you shall disregard such presumptions and arrive at your verdict from the evidence."
When the whole of the instruction as given is considered together with other given instructions, which clearly explain what is meant by preponderance of the evidence and further instruct that it is the plaintiff's burden to establish her case by a preponderance of the evidence, the appellant's objection loses its force. In consequence, we find the instruction is not inharmonious with what was said in the Wood case.
While a further given instruction dealing with undue influence is said to be a misstatement of the law, this objection may be disregarded as the jury found in appellant's favor on that issue. Furthermore, counsel offers no authority to support his position in this respect.
Another given instruction is claimed to unfairly comment on the evidence. *977 We find this to be without any merit whatsoever, as the instruction merely lists the factors which the jury were directed to consider as a whole without any one of which being controlling. It made no reference as to what the evidence was concerning such factors. Nor can we agree with counsel's other objection that the instruction should have mentioned certain phases of the testimony, as to do so would indeed have been an unwarranted comment upon evidence.
The last given instruction criticized dealt with "mental delusion." Counsel attacks the instruction because the phrase "mental delusion" is used rather than "insane delusion" and claims there was no evidence as to an insane delusion. The instruction correctly defines an insane delusion, the delusion, however, being referred to as "mental" rather than insane." Although this deviation from the usual is not approved, it is not of sufficient gravity to justify a reversal. As to there being no evidence to warrant the giving of the instruction, we again are at odds with counsel. There was testimony that the deceased at one time thought Mrs. Burg had stolen money from him, yet other evidence indicated this was false. Other testimony showed he believed he had given his property away, but again that belief was shown to be contrary to the fact. While these circumstances may be considered as slight evidence of mental or insane delusion, their importance was for the jury's determination and hence the jury were entitled to be instructed as to applicable law.
From what has been mentioned regarding the giving or refusal of instructions, we conclude the court did not err in its rulings regarding them.
The last of appellant's complaints, that rulings upon motions were erroneous, need not be discussed, as they sum up to and are based upon the same matters already considered.
We find no reversible error, and the judgment of the court below is affirmed.
Affirmed.